# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Anthony James, # 310987, | ) C/A No. 4:08-0058-HMH-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| | ) |
| Lt. June, Officer of Lee Correctional Institution; and | ) |
| Lt. Hancock, Officer of Lee Correctional Institution, | ) |
| | ) |
| Defendants. | ) |

The plaintiff, Anthony James, filed this action on January 10, 2008, alleging various claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983. The plaintiff is an inmate currently housed at the Lee Correctional Institution ("LCI"). Before the undersigned is the defendants' motion for summary judgment. (Document # 20.)[1]

## I. PROCEDURAL BACKGROUND

On June 13, 2008, the defendants filed a motion for summary judgment, along with supporting memorandum, affidavits, and exhibits. (Document # 20). The undersigned issued an order filed June 13, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), advising the plaintiff of the motion for summary judgment procedure and the possible consequences if he

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

failed to respond adequately. On July 11, 2008, the plaintiff filed a response opposing the defendants' motion for summary judgment. (Document # 23.)

## II.  DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

As noted above, the plaintiff is currently an inmate at LCI. The plaintiff alleges claims regarding incidents which occurred while he was incarcerated at the LCI. The plaintiff alleges the defendants violated his Constitutional rights through the use of excessive force. (Compl.)

On September 14, 2006, the plaintiff went to the East Yard Cafeteria for breakfast. Plaintiff asserts that he noticed Lt. June "standing at the curve of the line right at the edge of the wall thats[sic] connected to a metal railing." Plaintiff asserts that after he was seated with his tray he went back to the "diet line" to attempt to get some butter when Lt. June stopped him and told him to go sit down. Plaintiff alleges that he asked why he could not get butter and Lt. June responded because the last time he did so, he tried to get an extra tray. (Compl.). Plaintiff asserts the following took place, quoted verbatim:

> I then said well how could I get another without you seeing me when your standing right there? He disregarded that question and told me to go back to my seat. I then verbally disrespected him by calling him a bitch, telling him how it was fucked up that he wouldn't let me get any butter. I was also loud saying this, "but," I was also going to my seat with my back turned to him talking over my shoulder. After I stepped through the railing to get to my seat, Lt. June then said you better sit down or either, shut your mouth (I don't remember which but one was said right before he threatened me), before I drag your ass out of this kitchen. I then said drag shit, you ain't gonna do shit to me. I just got to my seat and sat down to start eating my food when Lt. June came from behind the wall, stepped across the railing and then grabbed the back of my shoulders with each hand, and told me lets go. Without looking back, I said to him I'm not going no fucking where and I then snatched my right shoulder from his hand. He grabbed it a 2nd time and slung me from my seat to

the metal railing using both his hands. After I bounced from the metal railing to the floor Lt. June then told me to put my hands behind my back. I was expecting him to just hold me until we got outside but he cuffed me. Lt. Hancock and 2 other officers were on the other side of the railling[sic] watching. When Lt. June helped me off the floor Lt. Hancock grabbed me and escorted me out to the kitchen. The entire time I was escorted, I was left vulnerable by Lt. Hancock for any inmate that wanted to do me harm because I was cuffed on one side of the rail where all the inmates were and Lt. Hancock was on the other side with the 2 officers. When I got to medical I didn't feel any pain from the assault, so I didn't mention any pain but I did the next morning on my left side of my face, neck, shoulder and ankle. After leaving medical and A-building holding cell, I was taken to lock-up (SMU/ASU) without any personal hygiene items, undergarments to change, mattress, sheets or blanket to sleep with. Mattress stuffing was put together by other inmates so I (and my cell mate Edward Breland) could have something to sleep on but it wasn't enough for one mattress and both of us had to share this. I lived like this on lock-up until Sept. 29, 07 after DHO didn't give me lock up time for threatening to inflict harm on Lt. June.

(Compl.).

Plaintiff alleges that "I verbally disrespected Lt. June, incited and created a disturbance but I didn't threaten to hurt anyone. If he did felt threatened he could've called 1st response and stayed behind metal rails where he was safe, and 2nd, he was out of order to place his hands on me in the first place when he forced me out of the cafeteria without eating." Plaintiff is seeking acutal damages. (Comp. at 5).

### B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the

pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir.1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed.R.Civ.P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed.R.Civ.P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. Fed.R.Civ.P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. DISCUSSION

**1. Excessive Force Claim**

As noted above, the plaintiff alleges that his constitutional rights were violated as a result of

4

the use of excessive force by the defendants. Specifically, the plaintiff alleges in his complaint that Lt. June grabbed him by the shoulders and said "let's go." Plaintiff asserts that when he said "I'm not" Lt. June grabbed him and he bounced from a metal railing and landed on the floor. Plaintiff asserts that after Lt. June helped him from the floor he was handcuffed and escorted out of the kitchen to medical by Lt. Hancock. Plaintiff alleges that he did not have any pain at the time but had pain the next day in his face, neck, should and ankle. (Complaint).

Defendants submitted the affidavit of Lt. Cedric June attesting that on September 13, 2006, at approximately 8:35 A.M., he observed plaintiff in the diet line of the east cafeteria asking the cafeteria attendant for butter. June states that because plaintiff was not on a restricted diet, and should not be in the diet line, he directed him to sit down and eat. June asserts that plaintiff responded to his directives by calling him a "bitch" and stated, "June I am sick of your fucking shit." June attests that he then instructed plaintiff to leave the area and he refused stating "better not put your fucking hands on me!" June states that he attempted to escort plaintiff by his right arm out of the cafeteria at which time he snatched his arm away. As a result, June states that he then grasped plaintiff by his shoulders and placed him on the floor where he was able to handcuff plaintiff, and he was escorted to medical. (June affidavit).

June attests that the event involving plaintiff has been well documented as he prepared an Incident Report and Use of Force Report directly following the resolution of the incident and charged plaintiff with the institutional violation of threatening to inflict harm on a corrections officer. June attests that he only brought plaintiff to the floor and handcuffed him in a good faith effort to maintain order within the prison cafeteria, and it was not his intent to deliberately or maliciously cause harm or injury to plaintiff. June asserts that plaintiff reported to Nurse McCaskill that he was not in any

pain when he was taken to medical after the incident. June attached copies of the incident report, the report on use of force, the pre-hearing detention placement extension, and a copy of the disciplinary report revealing he was found guilty and sanctioned. (Doc. #20-3).

Defendants submitted an affidavit from Lt. Richard A. Hancock who attests that he is employed by the South Carolina Department of Corrections as a corrections officer and was a corrections officer at LCI on September 13, 2006. Hancock attests that his personal involvement in the events giving rise to plaintiff's complaint is limited to the escorting of plaintiff to medical. Hancock states that during the take down of plaintiff by Lt. June and the events leading up to the take down, he was outside of the East Yard Cafeteria. Hancock asserts that he noticed a commotion inside the cafeteria and observed the seated inmates stand up in response to a disturbance. At that time, Hancock attests that he went into the cafeteria where he found Lt. June attempting to gain control of plaintiff who was lying face down on the floor. Hancock asserts that once plaintiff was secured with handcuffs, he was escorted to the medical unit and was never in any danger or harm from other inmates. Hancock attests that during his escort of plaintiff to the medical unit, he did not appear to be in any physical pain whatsoever. (Doc. #20-4).

Defendants also submitted the affidavit of Kathy M. McCaskill who is employed as a Licensed Practical Nurse at LCI. McCaskill attests that on September 13, 2006, she saw plaintiff to assess his condition following a use of force by Lt. Cedric June. McCaskill states that plaintiff was escorted to her by Officer Richard A .Hancock immediately following the use of force by Lt. June in accordance with the SCDC policy. McCaskill attests that she performed a Post Use of Force (PUOF) check on plaintiff at approximately 9:05 A.M. on September 13, 2006, which revealed that he had no bruises or abrasions on his wrists, and that he had full range of motion to all extremities.

Further, McCaskill states that plaintiff verbally stated that he was fine from the take-down, no injuries were noted, and no treatment was necessary. McCaskill attests that the examination of plaintiff revealed no physical injuries as a result of the take-down and handcuffing performed by Lt. June and her conversation with plaintiff confirmed that he was not in any pain or physical discomfort. (McCaskill affidavit, Doc. #20-5). McCaskill also attached a copy of the plaintiff's medical record and the SCDC PUOF form.

It is well established that the use of excessive force upon an inmate violates the Eighth Amendment's prohibition against cruel and unusual punishment. Hudson v. McMillian, 503 U.S. 1, 5 (1992). To establish an Eighth Amendment claim for cruel and unusual punishment, the plaintiff must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298. The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 6-7. The objective component requires the inmate to prove that the use of force was more than de minimis or, in the alternative, that it was repugnant to the conscience of mankind. Id. at 9-10. De minimis injury can be conclusive evidence that the force used was also de minimis and, therefore, not violative of constitutional protections. See Norman v. Taylor, 25 F.3d 1259, 1264 (4th Cir. 1994).

Appropriate force may be used by prison officials when it is intended to maintain the discipline within a prison institution or to restore order. See Hudson, 503 U.S. at 6; Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official "inflicted

7

unnecessary and wanton pain and suffering." Hudson, 503 U.S. at 7.  In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id.  (Internal quotations omitted).  In determining whether a prison official acted maliciously and sadistically the court should consider: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7; Williams, 77 F.3d at 762. Plaintiff has failed to prove the objective and subjective components of an excessive force claim.

Even assuming the plaintiff's allegations are true, the plaintiff has failed to establish a sufficient injury.  As explained by the Fourth Circuit Court of Appeals in Norman v. Taylor, 25 F.3d at 1263, "absent the most extraordinary circumstances, a Plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis."  Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis. Id. at 1262-63.  "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973).  See also Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996) (holding prison officials are entitled to use appropriate force to quell prison disturbances, and acting under pressure without the luxury of a second chance, an inmate must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm).

Here, the plaintiff has alleged injuries which were de minimis.  Furthermore, in plaintiff's response in opposition to  the motion for summary judgment, plaintiff states "I understand that no

8

serious injury was sustained by the assault but the fact that the assault did took [sic] place is a violation of the Eighth and Fourteenth amendment." (Doc. #23, ¶ 1). Additionally, Nurse McCaskill's affidavit and the medical records submitted that any injury sustained by the plaintiff was nothing more that *de minimis*. On September 13, 2006, the plaintiff was seen by medical personnel after the incident. The nurse noted that plaintiff stated he had no pain, there was no bruising or abrasions noted, and the examination revealed full range of motion to all extremities. The plaintiff speculates that injuries might have occurred because he was left vunerable [sic] for any inmate that wanted to cause him harm because he was "cuffed on one side of the rail where all the inmates were and Lt. Hancock was on the other side with the 2 officers." (Complaint, p. 4). Such speculation, however, falls short of actual serious or significant injury. Moseley v. King, 2006 WL 2827555 (D.S.C. 2006).

    Further, the PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir.1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering). Here, as discussed above, the plaintiff has not

made such a showing of physical injury which is more than *de miminis*. Accordingly, this claim should be dismissed.[2]

### 2. Qualified Immunity

Defendants argue that they are entitled to qualified immunity.

Although the burden of showing immunity remains on the defendants, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  The defendants argue that they are entitled to qualified immunity in their individual capacity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established

---

[2] In the relief portion of his complaint, plaintiff requests monetary damages for "discrimination and neglect." (Complaint p. 5). However, plaintiff made no allegations in the complaint that he was discriminated against or neglected or how these actions allegedly occurred. Mere conclusory allegations of discrimination are insufficient to state a claim. As plaintiff has only asserted conclusory allegations, it is recommended that any claims as to "discrimination and neglect" be dismissed.

statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1985).

In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v. Dicksey, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F. 2d at 261, citing Collinson v. Gott, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of Swanson v. Powers, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad

>    guesses in gray areas; they are liable for transgressing
>    bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. The undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

### 3. Eleventh Amendment Immunity

The defendants contend that the plaintiff's §1983 claims against them for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as employees of the SCDC at LCI they are not a "person" under 42 U.S.C. §1983 and, therefore, are not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." Also, state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the SCDC at LCI and, thus, state officials acting in their official capacity while employed by the SCDC. Therefore, they are entitled to Eleventh Amendment immunity from monetary damages.

### 4. State Law Claims

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiff's complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want

of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III.  CONCLUSION

Based on the foregoing, it is recommended that the defendants' motion for summary judgment (document # 20) be GRANTED and the plaintiff's complaint be dismissed.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
September 17, 2008                                       United States Magistrate Judge
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**